J-S30013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| A.S.C., NOW A.S.L., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| N.B.C., | |
| Appellee | No. 1427 WDA 2017 |

Appeal from the Order Entered August 31, 2017
In the Court of Common Pleas of Indiana County
Civil Division at No(s): 10486 CD 2012

BEFORE: BENDER, P.J.E., STABILE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED JULY 16, 2018**

A.S.C., now A.S.L., (Mother) appeals from the August 31, 2017 order that granted the Petition for Special Relief/Modification of Marital Settlement Agreement filed by N.B.C. (Father) relative to a modification of the amount of child support Father pays to Mother for the support of the parties' two children. We affirm.

The trial court provided the following factual and procedural history of this matter, stating:

> The parties were married in May of 2006 and divorced on June 25, 2012. The March 22, 2012 Marital Property Settlement Agreement was incorporated into the final Divorce Decree and Order filed in the Court of Common Pleas of Indiana County, Pennsylvania. The parties have two children, [A.C.], age 10, born June [] 2007, and [D.C.], age 7, born July [] 2010. The Marital

_____

[*] Retired Senior Judge assigned to the Superior Court.

Property Settlement Agreement provided that [Father] would pay child support to [Mother] in the amount of $2,000.00 by the 15th of every month. In addition to the Marital Property Settlement Agreement, the parties entered into a Consent Custody Agreement on March 22, 2012, which granted the parties shared legal custody with [Mother] receiving primary physical custody and [Father] receiving partial physical custody.

Subsequent to the divorce, the parties, both Officers in the United States Military, moved to the state of California. Both parties have since remarried, seemingly causing the parties['] previously amicable post-divorce relationship to unravel. Then, in the spring of 2015, [Mother] made a military transfer to Bahrain. Upon learning of [Mother's] military transfer, [Father] initiated a custody action in California. Within the course of said lengthy custody action, the parties began to communicate and negotiate via multiple platforms since [Mother] was stationed overseas. The parties exchanged several offers and counteroffers while negotiating terms and eventually reached an agreement regarding each party's custody rights to children. The agreement provided that [Mother] would receive sole legal and physical custody of the minor children, that [Father] would receive specific visitations times, and that the children were allowed to relocate with [Mother] whenever it becomes necessary for [Mother's] employment even without [Father's] approval. Both parties signed this agreement on March 30, 2016[,] and the agreement was filed on April 29, 2016. It is important to note that this agreement made no mention of child support payments.

The parties' stories regarding the formation and terms of said agreement differ and have led to the present matter. [Father] claims that he signed the March 30, 2016 agreement after negotiating a modification in child support payments with [Mother]. Citing to text message communications and emails between the parties, [Father] avers that the parties had an agreement to modify the child support payments from the $2000 per month contained in the Marital Property Settlement Agreement to $500 per month from May 1, 2016 through April 30, 2017; then $1,000 per month from May 1, 2017 through April 30, 2018; and lastly to $1,500 per month from May 1, 2018 through July 22, 2028. [Father] further avers that the parties did not formalize the child support portion of their agreement because Pennsylvania, not California, maintained jurisdiction over the child support payments. Moreover, [Father] cites additional messages

indicating that [Mother] was to draft the child support provision in another document which the parties would sign and notarize and that [Mother] would file in Pennsylvania. It is [Father's] argument that he signed the terms of the California agreement after the parties agreed to the child support modification terms, and that he relied upon [Mother] to file the second part of their agreement in Pennsylvania. To this point, [Mother] has not filed such a document in Pennsylvania.

[Mother] claims that no such agreement to modify the terms of child support was ever reached. She avers that the parties reached the agreement in exchange for [Mother's] not pursuing sanctions and attorney's fees against [Father] related to their California custody case. Moreover, [Mother] claims that she has not had the Apple ID listed in [Father's] exhibits since 2012/2013, and that she closed her former Gmail account in the spring of 2015. As such, she claims that nothing would have been sent to [Father] after 2013 using the Apple ID listed in [Father's] exhibits.

Since the parties entered into their California agreement, [Mother] left California and moved with the children to Virginia. [Father], operating under the belief that the parties reached an agreement modifying his child support obligation, began making modified child support payments to [Mother]. [Mother] then alleged that [Father] was delinquent in his support payments, leading to [Father's] receiving a letter from the Commonwealth of Virginia, Department of Social Services, Division of Child Support Enforcement, informing him that [Mother] had opened a case against him. Beginning in late 2016, even after meeting with the case manager in Virginia and consulting an attorney in Virginia, [Father's] wages were garnished. These actions led to the filing of the Petition under consideration herein.

Trial Court Memorandum & Order (TCM&O), 8/31/17, at 2-4.

The court then set forth the principles of contract law, which it applied to the facts here to determine whether the parties had agreed to modify the Marital Settlement Agreement as it related to child support. The court quoted text and email conversations between the parties, determining that the parties had reached an agreement to modify the support payments and had

"manifested an intent to be bound by the terms found in the proposed order contained in [Father's] 'Exhibit H.'" TCM&O at 9-10. The court also found that the terms were sufficiently definite and that consideration existed. Thus, the court entered the order dated August 31, 2017, that is now at issue.

Mother appealed and filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2). The trial court responded by issuing an opinion in support of its order, stating:

> The [c]ourt was called upon to determine whether an agreement existed between the parties to modify the parties' original Marital Property Settlement Agreement, filed on March 22, 2012. The primary issue was whether the parties agreed to modify the amount of child support [Father] would pay [Mother] in exchange for [Father's] not opposing [Mother's] desired relocation from the state of California to Virginia, and whether [Father] gave [Mother] sole legal and physical custody of the parties' two minor children.
>
> . . .
>
> The substantive issue before the [c]ourt was whether the parties reached an agreement to modify the terms of [the] child support payment. To make this determination, the [c]ourt looked to basic principles of Pennsylvania contract law.
>
> The primary issue on appeal is jurisdiction and venue. Most counts in [Mother's] Statement of Matters Complain[ed] Of address jurisdiction. The California court that handled the parties' custody case specifically declined to address issues of support and asserted that Pennsylvania retained jurisdiction over matters regarding support and matters not involving custody directly.
>
> The parties filed a Property Settlement Agreement ("the Agreement") in this [c]ourt on March 22, 2012[,] in which the parties agreed that the [A]greement was to be construed under the laws of the Commonwealth of Pennsylvania in Paragraph 29 of the Agreement. The Agreement specifically addresses the issue of child support in Paragraph 28. Additionally, [Mother] stated in

- 4 -

text messages and in an email (that corroborates the text messages) that she would file the agreement in a Pennsylvania court, as evidenced in [Father's] Brief in Support of his Petition for Special Relief a[t] Exhibit F … and Exhibit J.

[Mother] also contends that this [c]ourt abused its discretion by failing to hear any testimony about the allegations in the filed pleadings. This matter came before this [c]ourt on [Father's] Petition for Special Relief and Modification of Marital Settlement Agreement and the parties *agreed* that they would submit briefs outlining their respective positions on the very matter decided. This agreement was outlined in an Order of Court dated April 10, 2017.

Conclusion

Applying the facts of this case to the contract principles, the [c]ourt found that the parties reached an agreement to modify the child support payments for the reasons set forth in the Opinion and Order of Court dated August 31, 2017.

Trial Court 1925(a) Opinion (TCO), 11/22/17, at 1-2 (emphasis in original).

Now, on appeal, Mother raises the following issues for our review:

1. Does a Pennsylvania trial court have jurisdiction to enter a child support order when the subject children never resided in Pennsylvania and neither parent is a resident?

2. May a trial court hear no testimony whatsoever, and not follow any of the rules of civil procedure, but proceed to make findings of fact and enter a decision retroactive to a date and time prior to enforcement actions of another state, prior to any request for modification?

3. May a trial court apply Pennsylvania contract law concepts, despite the parties['] having resided in California, and without considering California laws regarding how any alleged negotiated child support agreement or alleged contract must be approved before becoming a child support [o]rder?

4. May a trial court apply contract law only to alleged negotiations, … agreement or contract, without ever

- 5 -

considering the best interests of the children or the children's interests in the support decision?

5. May a trial court accept a child support case but never hear any testimony whatsoever regarding the parties' income or children's needs and expenses and failing to make any findings on any support calculations, deviations, needs, expenses, or any other support issues beyond the alleged negotiations of an alleged contract?

6. May a trial court allow a party to forum shop between at least three (3) states to pick a state more beneficial to him and his child support obligations?

Mother's brief at 5-6.

Initially, we note that when reviewing a child support order, we are guided by the following well-settled standard:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Morgan v. Morgan*, 99 A.3d 554, 556-57 (Pa. Super. 2014) (quoting *McClain v. McClain*, 872 A.2d 856, 860 (Pa. Super. 2005) (internal citations omitted)).

As noted by the trial court, Mother's central argument is that Pennsylvania does not have jurisdiction over this support matter. Rather, she contends that because several states are involved, the federal Full Faith and

Credit for Child Support Orders Act (FFCCSOA), 28 U.S.C. § 1738B, is controlling and pre-empts similar state laws. Noting that Father is a resident of California and that she and the children reside in Virginia, Mother claims that pursuant to the FFCCSOA, Father should have filed his modification order in California and registered the Pennsylvania order there. Mother then quotes various sections of the FFCCSOA, which she contends direct that California is the proper jurisdiction to hear Father's modification petition.

Father counters Mother's argument by pointing out that the FFCCSOA provides that states are required to enforce child support orders entered in another state and limits a state's ability to modify another state's child support order. In other words, Father asserts that the FFCCSOA does not apply to the instant situation, because the Pennsylvania court is not being asked to enforce or modify another state's child support order. Rather, the court here in Pennsylvania considered Father's request to modify the child support provision in the parties' Martial Settlement Agreement that was incorporated in the divorce decree issued in Pennsylvania. Father cites Sections 7201(a) and 7205(a) of the Uniform Interstate Family Support Act (UIFSA), 23 Pa.C.S. §§ 7201(a) and 7205(a), which he contends provides guidance regarding jurisdiction for the situation presently before this Court. The pertinent language of these sections of the UIFSA provide:

**§ 7201. Bases for jurisdiction over nonresident**

> **(a)** **Jurisdiction.**—In a proceeding to establish or enforce a support order or to determine parentage of a child, a tribunal

of this State may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if any of the following apply:

. . .

(2) The individual submits to the jurisdiction of this State by consent in a record, by entering a general appearance or by filing a responsive document having the effect of waiving any contest to personal jurisdiction.

23 Pa.C.S. § 7201(a)(2).

**§ 7205. Continuing, exclusive jurisdiction to modify child support orders**

**(a)     Extent.**—A tribunal of this State that has issued a child support order consistent with the law of this State has and shall exercise continuing exclusive jurisdiction to modify the child support order if the order is the controlling order and:

. . .

(2) even if this State is not the residence of the obligor, the individual oblige or the child for whose benefit the support order is issued, the parties consent in a record or in open court that the tribunal of this State may continue to exercise jurisdiction to modify the order.

23 Pa.C.S. § 7205(a)(2).

Considering Father's assertions, it appears that his position is controlling. Moreover, we cannot overlook the language of Section 7205 that indicates that a Pennsylvania court "shall exercise continuing exclusive jurisdiction to modify" a child support order "even if [Pennsylvania] is not the residence of the obligor, the individual oblige or the child for whose benefit the support order is issued…." *Id.* Having reviewed the record in this matter, we are compelled to conclude that Mother is due no relief with regard to Issue

1. Moreover, Mother's argument in which she attempts to support her third issue centers on her contention that Pennsylvania does not have continuing jurisdiction in this case, *i.e.*, California law should have been applied as directed under the FFCCSOA.[1] For the same reasons with regard to our discussion of Issue 1, we likewise conclude that Mother's jurisdictional argument relating to Issue 3 provides her no relief.

We next turn to Mother's second issue wherein she contends that it was error for the court to have the parties submit the matter on briefs rather than to hold a hearing to determine whether a change in circumstances occurred, what constituted the parties' incomes, what the children's needs were and the impact of the support guidelines on the particular circumstances of this case. Mother also contends that the court incorrectly imposed the change in the support amount to a point in time prior to the date of the filing of Father's petition. Father responds that the parties had agreed that instead of a hearing, they would each submit briefs and exhibits to support their respective positions as to whether an agreement to modify the terms of the Marital Settlement Agreement was reached.

Notably, the trial court indicated that "[p]ursuant to the April 10, 2017 Order of Court, the parties agreed to submit case briefs in lieu of a hearing on

---

[1] In the context of the custody litigation, the California court declined to consider any child support issues and directed that Pennsylvania had continuing jurisdiction over any support matters. **See** TCO at 2.

- 9 -

this matter." TCM&O at 1. Mother not only agreed that no hearing was needed, but she also fails to indicate when/where in the record she objected to a lack of a hearing. Therefore, we are compelled to conclude that Issue 2 has been waived. As support for our waiver disposition, we rely first on Pa.R.A.P. 2117(c), which states:

**(c) Statement of place of raising or preservation or issues.**

Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the statement of the case shall also specify:

.  .  .

(4) Such pertinent quotations of specific portions of the record, or summary thereof, with specific reference to the places in the record where the matter appears (e.g. ruling or exception thereto, etc.) as will show that the question was timely and properly raised below so as to preserve the question on appeal.

We also note that Pa.R.A.P. 302 ("Requisites for Reviewable Issue"), provides that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Likewise, Pa.R.A.P. 2119(e) ("Argument") directs that "an issue is not reviewable on appeal unless raised or preserved below[.]"

In her fourth issue, Mother contends that the trial court did not consider the best interests of the children in its determination that the parties had entered into a modification of the Marital Settlement Agreement relating to child support. Citing **Knorr v. Knorr**, 588 A.2d 503 (Pa. 1991), Mother asserts that "child support was a child's right and parents could not 'bargain

- 10 -

away the rights of their children.'" ***Id.*** at 505. Both parties rely on ***Kraisinger v. Kraisinger***, 928 A.2d 333, 340 (Pa. Super. 2007), which states that "parties can make an agreement as to child support if it is fair and reasonable, made without fraud or coercion, and does not prejudice the welfare of the children." The ***Kraisinger*** decision held that the parties' agreement violated such a standard because the father was required to pay substantially less support than the guidelines would require and, therefore, it was not fair or reasonable and prejudiced the children's welfare.

Although Mother did make reference to the support guidelines in her brief with attached exhibits submitted to the trial court in response to the brief with attached exhibits submitted by Father, these references were not supported by or contained any evidence as to a calculation of what the guideline amount would or should be. Specifically, Mother's brief notes that Father suggested a stipulation providing that the parties recognized that the amount of support was below the guideline amount. Mother's brief (to trial court), at 7, 16. However, Mother merely requested that the trial court, if it granted Father's petition to modify, calculate the amount of support according to the child support guidelines. ***Id.*** at 17. Without more, it appears that the trial court with reliance on the numerous emails submitted to the court found that consideration of the best interests of the children was taken into account. Again, Mother did not raise this concern with the trial court until she filed her statement of errors complained of; nor does the court discuss this issue in

either of its opinions. Therefore, we must conclude that Mother has waived Issue 4.

Lastly, we consider Mother's argument that relates to Issue 6.[2] Essentially, Mother contends that Father was forum shopping for a state that would advantage him and/or disadvantage her. Mother attempts to support her position by stating that under the FFCCSOA either California or Virginia would be the proper jurisdiction to consider Father's petition for modification. Specifically, Mother argues that Father should have sought the child support modification in California, where he resided, where the child custody and sanctions issues were being litigated and then were decided, where Mother had retained an attorney, and where the support negotiations had occurred. Mother also suggests that Virginia would have been an appropriate state in which Father could have filed his modification petition in that she and the children lived in Virginia and that Virginia had begun enforcement of the prior support order by attaching Father's wages. Mother asserts that Father did not

_____

[2] In her list of issues provided in her brief, Mother does not present an argument section directed at what she identifies as Issue 5. Rather, she provides argument identified as Issue 5, which in actuality is her position regarding Issue 6. Therefore, we are compelled to conclude that Issue 5 is waived. *See* Pa.R.A.P. 2119(a) ("[A]rgument shall be divided into as many parts as there are questions to be argued[.]"). *See also In re. R.D.*, 44 A.3d 657, 674 (Pa. Super. 2012) ("The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authority."); *Jarl Investments, L.P. v. Fleck*, 937 A.2d 1113, 1121 (Pa. Super. 2007) (stating that an issue is waived if no argument is presented in support of a challenge to trial court's determination).

- 12 -

seek the modification in either Virginia or California because he assumed those two states would not recognize the parties' negotiations or that those states would determine that he owed a higher amount due to the established support guidelines that existed in those two states.

Again, we are unable to determine where Mother raised this issue below. Moreover, the record shows only that Father filed his modification petition in Pennsylvania because the child support issue arose out of that portion of the marital settlement agreement that addresses child support. Also, as noted in footnote 1 herein, the California court refused to consider any child support issues, indicating that Pennsylvania had jurisdiction. The trial court was simply responding to Father's petition requesting the child support modification. In fact, no evidence of forum shopping appears in the record. Therefore, this issue does not provide Mother with any relief.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/16/2018</u>